# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| STANLEY ULATOWSKI, | : | Civil No. 1:12-CV-254 |
| --- | --- | --- |
| Petitioner, | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| DAVID J. EBBERT, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

I.     **Statement of Facts and of the Case**

    A.     **Introduction**

In its current posture,[1] this case comes before the undersigned for full consideration for the merits of the petitioner's claims that a prison disciplinary finding was constitutionally infirm because that finding was unsupported by "some evidence." Specifically, the petitioner, Stanley Ulatowski, a federal inmate, invites us to examine the results of a prison disciplinary hearing which led to the forfeiture of good time for this federal prisoner. Because we find that Ulatowski was afforded a full panoply of

---

[1] By way of background we note that this matter was initial filed on February 9, 2012, and was assigned to Magistrate Judge Mannion. (Doc. 1.) On November 16, 2012, Judge Mannion recommended dismissal of this petition citing the petitioner's failure to exhaust his administrative remedies. (Doc. 7.) On January 10, 2013, the district court declined to adopt this recommendation and ordered a consideration of the merits of this petition. (Doc. 10.) This case was then reassigned to the undersigned, and we submit the enclosed Report and Recommendation which speaks to the merits of Ulatowski's claims.

1

procedural protections in this disciplinary hearing, and conclude that there is sufficient evidence to support the prison's finding of misconduct, it is recommended that this petition be denied.

### B. DHO Proceedings

The pertinent facts can be simply stated: The petitioner, Stanley Ulatowski, is a federal prisoner who was housed in the United States Penitentiary, Canaan, in February of 2011. On February 19, 2011, at about 8:30 am, Ulatowski was cited for Possession of any Narcotics, Marijuana, Drugs or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff, a violation of institutional rules. (Doc. 5-1, Fenstermaker Decl. Ex. 2; Incident Report Attach. 2a.) The Incident Report describing this infraction alleged that, on February 19, 2011, while conducting a search of cell 116 in unit B-2, prison staff discovered what appears to be a home-made hypodermic needle in a legal paperwork envelope which was secured in the top locker of cell 116. The name inscribed on the envelope which concealed the hypodermic needle was the petitioner, Ulatowski, Stanley #39329-066. (Id.) Thus, the hypodermic needle was found hidden among Ulatowski's prison legal paperwork.

Ulatowski was informed of this disciplinary citation on the day the syringe was discovered in his locker, February 19, 2011. At the time that this Incident Report was delivered to Ulatowski on the morning of February 19, 2011, Ulatowski was also

advised of his right to remain silent at all stages of the disciplinary process. (Id. p. 2.) After indicating that he understood his right to remain silent, Ulatowski told the investigating Lieutenant, "It's not mine Lt." (Id. p. 2.) It further appears that Ulatowski was directed to submit to a drug test on February 19, which he refused, a refusal which resulted in a separate disciplinary citation and finding against the petitioner. (Id.)

At the conclusion of this initial investigation, the investigating lieutenant referred the Incident Report to the prison Unit Discipline Committee (UDC) for an initial hearing. (Id. p. 2.) Four days later, on February 23, 2011, the UDC held its initial hearing. (Id. p. 1.) At this proceeding Ulatowski was advised of his administrative procedural due process rights. (Doc. 5-1, Fenstermaker Decl. Ex. 2; Inmate Rights at Discipline Hearing Attach. 2b.) Ulatowski waived his right to a staff representative, but requested his cellmate appear as a witness on his behalf, stating that this witness would testify that he had placed the needle in Ulatowski's locker. (Id.) Ulatowski also informed the UDC that, "It [the hypodermic needle] was not mine; my cell mate put it there." (Id., p. 3.) At the conclusion of the UDC hearing, the UDC found grounds to sanction Ulatowski and referred the Incident Report to the prison Disciplinary Hearing Officer (DHO) for a final hearing. (Id.)

This DHO hearing was conducted on March 7, 2011. (Doc. 5-1, Fenstermaker Decl. Ex. 2 DHO Report Attach. 2d).[2] At this hearing, Ulatowski waived his right to a staff representative, (Id. p. 1), and denied that he committed this prohibited act, stating: "The syringe is not mine." (Id. p. 2.) Under questioning by the DHO, Ulatowski acknowledged that he stored his personal property, including legal documents, in the top locker of cell 116 where the needle was found, but denied possession of the hypodermic needle. (Id.) When asked how the needle found its way into his legal property, Ulatowski responded, "You'll have to ask my witness" and stated that there was no lock on the locker. (Id. p.2.) Ulatowski's cellmate then appeared as a witness at the hearing, and stated: "I've been trying to tell everybody. I placed it there in hopes it would not be found. They found wine that day and he reporting staff member kept searching the cell." (Id.) Upon questioning by the DHO, the witness stated, "Me and the officer had problems. I put it in his legal work figuring it would be safe." (Id. p. 2.)

At the conclusion of the hearing, the DHO determined Ulatowski committed the prohibited act of possession of a syringe. (Id. p. 2.) The DHO's decision reflected a careful review of the conflicting evidence presented before him at this disciplinary

---

[2] The DHO hearing was initially conducted on February 28, 2011, at 11:50 am, but it was suspended until March pending receipt of additional information. (Id. p. 3.)

4

proceeding. Thus, in addition to the Incident Report, Ulatowski's statement and the witness's statement, the DHO considered a photograph dated February 19, 2011, depicting a homemade hypodermic needle and a memorandum dated March 2, 2011, from the reporting staff member which explained that on February 19, 2011, at about 7:05 a.m., during a random cell search of cell 116, in unit B-2, the upper locker was secured with a combination lock. This locker was the locker utilized by Ulatowski and the fact that it was reportedly secured by a combination lock evidenced a degree of security and control which Ulatowski had imposed upon the property which he stored in the locker. (Id. p. 2.)

The DHO considered, but ultimately gave little weight to Ulatowski's statement in which he denied ownership of the syringe. (Id.) In this regard, the DHO noted that upon questioning at the DHO hearing, Ulatowski acknowledged he stored his belongings, including his legal documents, in the top locker of cell 116. (Id.) The DHO also indicated that he considered the testimony of Ulatowski's witness, in which the witness stated he placed the syringe in Ulatowski's legal paperwork envelope. (Id.) The DHO noted, however, that there was no independent corroboratng evidence presented at the hearing that supported the witnesses' statement. (Id. p. 3.) The DHO further observed that on February 19, 2011, Ulatowski was also charged with Refusing

to Take a Drug Test (Code 110), a disciplinary citation which was separately upheld at a DHO hearing on February 28, 2011. (Id.)

The DHO then imposed the following sanctions: (1) disallowance of 40 days good conduct time (GCT); (2) 60 days disciplinary segregation; (3) forfeiture of 100 days non-vested GCT; (4) impound personal property for 60 days (excluding religious and legal materials); and (5) loss of telephone and visiting privileges for 18 months, followed by 18 months of restricted visiting. (Id. p .4.) The DHO report was delivered to petitioner on March 24, 2011. (Id.)

This habeas corpus petition was then filed by Ulatowski on February 9, 2012. (Doc. 1.)

## II. Discussion

### A. This Petition Fails on Its Merits

Considered on its merits, this petition fails on substantive grounds given the deferential standard of judicial review that applies to prison disciplinary actions. Liberally construed, in this habeas petition Ulatowski launches a two-fold constitutional assault upon this prison disciplinary decision, challenging that disciplinary process generally on procedural due process grounds, and asserting that the decision is substantively flawed since there is insufficient evidence to support a

finding of misconduct on his part. Yet, Ulatowski faces an exacting burden of proof in advancing these two constitutional claims.

### 1. Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the

disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee

8

(UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.18. The hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call

9

those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir.

2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### 2. Substantive Standards Governing DHO Decisions

In his habeas petition, Ulatowski also attacks the substance of the DHO decision, arguing that there was insufficient evidence to support a finding of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in this disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Accordingly, in order to pass constitutional muster a "disciplinary decision must [simply] be supported by 'some evidence,' that is, 'any evidence in the record that could support the conclusion reached by the disciplinary board.' " Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011). Therefore, it is well settled that

the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011) (The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011)("we need not examine the entire record, re-weigh the evidence, or independently assess

witness credibility in assessing whether the 'some evidence' standard is met.") Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof. See e.g., McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011); Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

> B. **Ulatowski Was Afforded His Procedural Due Process Rights at the DHO Hearing, and the DHO Finding of Misconduct is Supported By Adequate Evidence**

Judged against these standards, Ulatowski's procedural and substantive challenges to this prison disciplinary proceeding simply fail. First, with respect to any procedural due process claims, in this case it is evident that this prisoner's due process

rights were fully vindicated. Ulatowski received advance, written notice of the proposed disciplinary charges against him. Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses. In this case, Ulatowski either exercised those rights, or expressly waived the rights he had in connection with this disciplinary hearing. Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations, and afforded Ulatowski his due process rights, by providing him with written decisions outlining the basis of their actions, and describing his appellate rights.

As for any complaints regarding the procedural fairness of the DHO proceedings, the petitioner offers little to support this claim beyond a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Thus, the record of these disciplinary proceedings affirmatively reveals that Ulatowski was given all of the procedural protections that due process requires in this setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell,

418 U.S. at 563-67. Given the full array of procedural rights provided to Ulatowski during these proceedings, any procedural due process claims simply fail. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Nor can Ulatowski successfully challenge the substantive outcome of the DHO hearing, since it is apparent that this decision is adequately supported by "some evidence" in the record. Indeed, with respect to this issue, the DHO decision entailed the most basic of fact-finding determinations: an assessment of witness credibility. In this regard, the DHO properly found that the statements made by Ulatowski and his cellmate were unsupported by independent corroborating evidence and were contradicted by other independent evidence, which revealed that the syringe was found inside Ulatowski's locker, among Ulatowski's legal papers, and disclosed that there was a combination lock on the locker at the time of this discovery, a fact which permitted an inference of Ulatowski's control over the locker. This finding is reasonable given the evidence presented in this case, and since the "some evidence" standard of "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but only entails a

15

determination "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011), this reasonable, rational finding by the DHO is fatal to Ulatowski's claims in this petition.

Moreover, at the time of this discovery Ulatowski refused to submit to a drug test by prison staff and was sanctioned for that refusal. Ulatowski had no right in this institutional setting to refuse a drug test since: "Prison officials' use of investigative drug testing is reasonable under the Fourth Amendment 'as long as there is any basis or justification.' Burgos v. Canino, 641 F.Supp.2d 443, 461 (E.D.Pa.2009)." Mitchell v. Quick, CIV.A. 07-5021, 2010 WL 571776 (E.D. Pa. Feb. 17, 2010). Moreover, Ulatowski could be properly be sanctioned for his refusal to submit to a drug test; see Void v. Warden Fort Dix FCI, 345 F. App'x 818 (3d Cir. 2009), and his unwarranted refusal to submit to such a test was a fact which permitted the DHO as a fact-finder to draw an adverse inference against Ulatowski. See, generally, South Dakota v. Neville, 459 U.S. 553, 562 (1983)(upholding adverse inference from failure to take blood-alcohol test). Therefore, taken together, this proof clearly constituted "some evidence" establishing Ulatowski's responsibility for this infraction.

Accordingly, on these facts, we conclude that there was some evidence to support this disciplinary finding. Since there is an adequate factual basis for that

disciplinary finding, Ulatowski's substantive challenge to this disciplinary action should also be rejected. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the merits of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14thday of January 2013.

*<u>S/Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge